# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THOMAS W. SHADWICK, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) CASE NO. 09-CV-739-GKF-FHM ) |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff, Thomas W. Shadwick, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1] The matter has been referred to the undersigned United States Magistrate Judge for report and recommendation. *See* 28 U.S.C. § 636(b).

The role of the Court in reviewing the decision of the Commissioner under 42 U.S.C. §405(g) is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Doyal v. Barnhart*, 331 F.3d 758 (10th Cir.

---

[1] Plaintiff's November 8, 2006 application for Disability Insurance and November 1, 2006 application for Supplemental Security Income benefits were denied initially and upon reconsideration. A hearing before an Administrative Law Judge (ALJ) was held November 14, 2008. By decision dated February 4, 2009, the ALJ entered the findings which are the subject of this appeal. The Appeals Council denied review of the findings of the ALJ on September 18, 2009. The action of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

2003). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

Plaintiff was 45 years old at the time of the hearing. [R. 22]. He claims to have been unable to work since January 5, 2004, due to back, leg and ankle pain, depression and anxiety. [R. 27; Dkt. 16, p. 1]. The ALJ determined that Plaintiff has severe impairments consisting of: status post fusion at L5-S1; status post fusion at L3-4 and L4-5; degenerative disc disease; depression and anxiety. [R. 10]. The ALJ found that, despite these impairments, Plaintiff retains the residual functional capacity (RFC) to perform sedentary work[2] with simple repetitive tasks and incidental contact with the public. [R.12]. Based upon the testimony of a vocational expert (VE) at the hearing, the ALJ determined that Plaintiff's RFC prevented him from returning to his past relevant work (PRW) as a skid load operator and mud tender but found that there are other jobs that exist in significant numbers in the economy that Plaintiff can perform. [R. 14-15]. He concluded, therefore, that Plaintiff is not disabled as defined by the Social Security Act. [R. 15-16]. The case was thus decided at step five of the five-step evaluative sequence for determining whether a claimant is disabled. *See Fischer-Ross v. Barnhart*,

---

[2] The Social Security Administration classifies jobs according to the physical exertion required to perform them. "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying small, lightweight objects. Although "sedentary work" normally involves sitting, some walking and standing occasionally may be required as part of the job. 20 C.F.R. § 404.1567(a).

431 F.3d 729, 731 (10th Cir. 2005) (describing the five steps); *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

Plaintiff asserts the following errors: 1) the ALJ failed to evaluate and weigh the medical opinions in the record as required by law, selectively disregarded aspects of the medical evidence and otherwise mischaracterized aspects of the medical evidence; and 2) the hypothetical is not consistent with the residual functional capacity assessment. For the following reasons, the undersigned recommends this case be reversed and remanded to the Commissioner for reconsideration.

**Medical History**

Plaintiff injured his back in a work-related accident on January 5, 2004. [R. 184-188, 192-205].[3] An evaluation for purposes of Plaintiff's workers' compensation claim was conducted by Edward J. Prostic, M.D., on June 1, 2004. [R. 333-335]. Dr. Prostic said Plaintiff appeared able to return to only light duty employment and recommended an evaluation by a psychotherapist "as he is unlikely to be responsive to additional orthopedic care if he indeed has psychological decompensation." [R. 334-335].

A mylegram and diskogram in June 2004 showed spinal stenosis, herniated nucleuspulposus, and lumbar radiculopathy. [R. 204-205, 239].

On July 15, 2004, Plaintiff was examined by Hish S. Majzoub, M.D. [R. 276-279]. Dr. Majzoub recommended surgery at L3-L4 and possible pedicle screw fixation. *Id.*

Cherylan A. Yarosh, M.D., the surgeon who had performed Plaintiff's fusion in 1999, examined Plaintiff on August 10, 2004, reviewed his radiologic studies and on

---

[3] Plaintiff had a prior low back injury with surgical intervention at L5-S1 in 1999. *Id.*

3

September 10, 2004, recommended two level posterior interbody fusion. [R. 256-260]. While awaiting workers' compensation approval for the surgery, Plaintiff received treatment in the form of pain medication and physical therapy. [R. 247, 251-255]. On July 28, 2005, Plaintiff underwent an L3-4, L4-5 left transforaminal lumbar interbody fusion with Capstone and BMP L3 through S1 posterior instrumentation with pedicle screws and rods. [R. 206-208].

For the next six months, Dr. Yarosh treated Plaintiff with pain medication and by physical therapy after removal of his back brace and then referred him for a functional capacity evaluation (FCE) on January 30, 2006. [R. 246-250]. During that evaluation on February 13, 2006, Plaintiff demonstrated an inability to perform "a floor lift" and had difficulty performing lifting tasks below the waist level. [R. 405-439]. The evaluator said:

> It is the opinion of the evaluator that Mr. Shadwick would be able to perform a job where he could alternate sitting and standing while performing tasks at waist to shoulder level as he demonstrates decent grip and arm strength.

[R. 409].

A workers' compensation rating evaluation was conducted by Matthew W. Karshner, M.D., a colleague of Dr. Yarosh, on February 15, 2006. [R. 243-245]. Dr. Karshner noted the results of the FCE which he said: "essentially puts him at sedentary to occasional sedentary duty from the waist to the shoulders." [R. 243-245]. Dr. Karshner rated Plaintiff's impairment at 25% whole person and recommended as follows:

> The patient is to avoid any vibrating machinery from here on out. He is to keep his back straight and to lower himself with his knees prior to lifting, holding any objects close to him on rising from squatting. He has a 10 to 15 pound lifting limit.

4

> He is not to do any bending with lifting at all. His lifting ideally would be from waist level up to shoulder level. There are no hourly or environmental restrictions.

[R. 244-245].

Plaintiff was also evaluated for workers' compensation purposes on February 15, 2006, by John D. Pro, M.D., a psychiatrist. [R. 319-325]. Dr. Pro assigned Plaintiff a 25% impairment rating due to adjustment disorder with depressed mood and anxiety. [R. 323]. He said:

> Regarding his employability, it is important to note that from a psychological standpoint alone his impairment levels are compatible with some useful functioning, but not complete useful functioning. Thus, he may be employable from a psychological standpoint alone. It is also my opinion that at least theoretically, when his psychological impairment is combined with his 25% physical impairment rating, that he still may be employable. He does have significant reading difficulties and does have an exclusive manual labor background. However, with more aggressive treatment of his depression, and certainly with more aggressive treatment of his back pain (see below) then he might be able to participate in a vocational rehabilitation and work at some type of employment at least on a part-time, restricted basis. Epidural stimulator or intrathecal narcotic treatments also warrant consideration.

[R. 324]. Dr. Pro recommended higher doses of narcotics for pain management and more aggressive treatment of depression by way of medication that would help both pain and depression. *Id.* He emphasized that Plaintiff's persistent pain was fueling his depression and anxiety significantly and that better control of his pain would likely help the depression and anxiety. *Id.*

5

The record contains a PRT[4] signed by Karen Kendall, Ph.D., on February 26, 2007. [R. 283-296]. Dr. Kendall evaluated Plaintiff's mental impairment under the "B" criteria for listing 12.06, Anxiety-Related Disorders. [R. 283, 288]. She found Plaintiff had a moderate restriction of activities of daily living; moderate difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace; and noted there was insufficient evidence of episodes of decompensation. [R. 293].

Also in the record is a Mental RFC form completed by Dr. Kendall. [R. 297-300]. Dr. Kendall assigned moderate limitations in Plaintiff's ability to understand, remember and carry out detailed instructions and to interact appropriately with the general public. [R. 297-298]. The doctor said: "Claimant can perform simple and familiar more complex tasks with routine supervision in non stressful environment. Claimant can relate to supervisors and peers on a superficial work basis. Clmt functions best in an environment with others present. Claimant should avoid frequent [contact] with the general public. Claimant can adapt to a work situation."

A physical RFC was filled out and signed by Thurma Fiegel, M.D., on February 27, 2007, for limitations imposed by Degenerative Disc Disease and high blood pressure. [R. 301-308]. Dr. Fiegel found Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk about 6 hours in an 8-hour work day and

---

[4] Under the regulations, when evaluating mental impairments, the agency must follow a "special technique." 20 C.F.R. §§ 404.1520a(a), 416.920a(a). The agency is required to rate the degree of a claimant's functional limitations caused by those impairments in the areas of "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ then applies those ratings in determining whether the claimant's mental impairments are severe at step two and, if so, whether these severe impairments "meet[ ] or [are] equivalent in severity to a listed mental disorder" at step three. Id. §§ 404.1520a(d)(1-2), 416.920a(d)(1-2). At the ALJ hearing level, "[t]he decision must include a specific finding as to the degree of limitation in each of [those] functional areas." Id. §§ 404.1520a(e)(2), 416.920a(e)(2).

sit about 6 hours in an 8-hour workday. [R. 302]. She limited Plaintiff's postural activities to never climbing ladders/ropes/scaffolds but occasionally climbing ramps stairs, balancing, stooping, kneeling, crouching, and crawling. [R. 303]. As explanation for her findings, Dr. Fiegel noted Plaintiff's medical treatment and surgical history and said:

> The most current mer [medical examiner report] restricts the claimant to a light RFC, Dr. Matthew W. Karshner, of the Freeman Neurospine Clinic, given no hourly or environmental restrictions. Claimant's adl's are consistent with his medical evidence.

[R. 302-303].

On March 24, 2006, Plaintiff commenced treatment with Karen Schnell, Mn., ARNP,[5] a nurse practitioner at the Family Care Specialists clinic with C. Joseph Chourteau, M.D. [R. 269]. Ms. Schnell noted Plaintiff was slow to move and that he lies on his side first for lying down. *Id.* Her impression was 1) Lumbar Discogenic Disease [status post] fusion; 2) Panic Attacks; 3) Neuropathy [due to lumbar discogenic disease]. *Id.* She planned to obtain Dr. Yarosh's records and she okayed refills for Xanax, Hydrocodone, Ultram, Norvo and Baclofen.[6]

---

[5] Advanced registered nurse practitioner (ARNP) is a registered nurse with prescriptive authority who is qualified to provide comprehensive health care and manage a broad range of health services, including: promotion and maintenance of health; prevention of illness and disability; diagnosis and prescription of medications, treatments and devices for acute and chronic conditions and diseases; management of health care during acute and chronic phases of illness; guidance and counseling services; and consultation and/or collaboration with and referral to other health care providers and community resources. Oklahoma Nursing Practice Act, Title 59, Chapter 12, Section 567.3(a)(6); Oklahoma Administrative Code (OAC) Title 485:10-15-6.

[6] Xanax is indicated for management of anxiety disorder or the short-term relief of symptoms of anxiety. PDR, 53rd ed. (1999) 2516.
Hydrocodone is in a class of medications called opiate (narcotic) analgesics and in a class of medications called antitussives. Hydrocodone relieves pain by changing the way the brain and nervous
(continued...)

7

Dr. Prostic re-evaluated Plaintiff on March 31, 2006. [R. 331-332]. He noted Plaintiff's complaints of constant pain above the waist with radiation down the left leg to the top of his foot, worsening with all activities. [R. 331]. He said:

> It continues to be my opinion that on or about January 5, 2004, Thomas W. Shadwick sustained injury to his low back during the course of his employment. He has required multiple-level decompression and arthrodesis. He continues with significant residual symptoms. His condition may be complicated by psychological factors. His only work experience is doing labor-type activities though he has a high school education. Based upon the restrictions imposed by Dr. Karshner, the patient is essentially totally disabled from gainful employment. Additional orthopedic treatment is unlikely to be beneficial.

[R. 332].

Marilyn N. Metzl, Ph.D., conducted a neuropsychological evaluation of Plaintiff for workers' compensation purposes on May 6, 2006. [R. 353-370]. Dr. Metzl concluded that Plaintiff suffers from the psychiatric condition of depression and that he sustained 65% impairment to the body as a whole due to depression. [R. 364].

Peter V. Bieri, M.D., reviewed Plaintiff's medical records and examined Plaintiff on August 14, 2006. [R. 372-383]. Dr. Bieri assigned a 25% impairment rating and said:

---

[6] (...continued)
system respond to pain. http://www.nlm.nih.gov/medlineplus /druginfo/meds/a601006.html. (Last Revised - 08/01/2010).
  Ultram (Tramadol) is an opiate agonist used to relieve moderate to moderately severe pain. See drug information online at: http://www.nlm.nih.gov/medlineplus/druginfo/meds/a695011.html. (Last Reviewed - 10/01/2010).
  Norco (Acetaminophen) is an analgesic used to relieve mild to moderate pain. http://www.nlm.nih.gov/medlineplus/druginfo/meds/a681004.html (Last Revised 12/1/2010).
  Baclofen acts on the spinal cord nerves and decreases the number and severity of muscle spasms caused by multiple sclerosis or spinal cord diseases. It also relieves pain and improves movement. http://www.nlm.nih.gov/medlineplus/druginfo /meds/a682530.html (Last Reviewed - 9/1/2008).

> Physical restrictions are issued in accordance with the [DOT]. Based on review of documentation as provided and the results of clinical examination, considering the anatomic site of injury and degree of permanent impairment, I would conclude the claimant meets the general physical demand level defined as sedentary-light. This would limit occasional lifting to 15 pounds, frequent lifting not to exceed 10 pounds, and negligible constant lifting. Repetitive walking and standing should be performed no more than occasionally. Additional factors related to sedentary-light physical demand levels are applied accordingly for loss of task-performing ability, which is provided on a separate document.[7]
>
> The requesting source has made mention as to whether or not the claimant is permanently and totally disabled. While the claimant has lost the ability to do much of the work described in the vocational analysis, the sedentary-light physical demand level in and of itself does not necessarily preclude any work activity. Opinions regarding future employment activity by this evaluator must therefore remain speculative.

[R. 377-378].

Nurse Schnell continued to see Plaintiff on a regular basis from April 2006 to at least July 2008, during which time Plaintiff consistently reported back and leg pain. [R. 263-267, 311-315, 387-394]. Nurse Schnell adjusted Plaintiff's medications in accordance with his complaints regarding the severity of pain as well as to treat sleeping difficulties, headaches and abdominal pain including commencement of Cymbalta and then discontinuance of the medication because of side effects. *Id.*

On November 13, 2008, Nurse Schnell completed an RFC assessment form. [R. 395-398]. She listed Plaintiff's diagnoses as: 1) Chronic Lumbar Discogenic Pain with

---

[7] Accompanying Dr. Bieri's report is an attachment consisting of a breakdown of tasks required in Plaintiff's past jobs. [R. 379-383]. On the form, a black dot indicates Plaintiff can no longer perform all of the tasks described, "based on Dr. Karshner's restrictions" except traveling from home to work location. *Id.* Appearing next to the typed description of job tasks are handwritten "No" or "Yes" notes. *Id.* It is not clear what Dr. Bieri meant by these notes.

9

Radiculapathy - Spinal Fusion [due to] work related injury; 2) Chronic Depression [due to] Chronic Pain; 3) HTVD (hypertension) and for prognosis wrote: "Impairment is permanent [and] will not improve." [R. 395]. She stated she agreed with Dr. Bieri's opinion that Plaintiff's maximum exertional lifting would be occasional lifting to 15 pounds, frequent lifting 10 pounds, and negligible constant lifting. *Id.* Regarding Plaintiff's maximum ability to stand and walk (with normal breaks of 15 minutes every two hours) during an 8-hour work day, Nurse Schnell indicated "less than 2 hrs." [R. 396]. She also limited Plaintiff's ability to sit (with normal breaks) during an 8-hour work day to "less than 2 hrs." *Id.* She indicated Plaintiff could sit 15 minutes before changing position; stand 10 minutes before changing position; and that he must walk around every 15 minutes for 5 minutes each time. *Id.* She said Plaintiff would sometimes need to lie down or perform other complete postural changes (i.e., move from sitting to standing or vice versa) at unpredictable intervals during a work shift and that this would happen every 30 to 60 minutes. *Id.* She opined Plaintiff needed to rest at will from any type of work activities. *Id.* Her medical findings were described as: "Active ROM Spine markedly reduced in all directions - [subjective complaints of] pain, palpable muscle spasms, guarding low back - reported unrelenting low back pain - spends most of his time in bed - [left] leg muscle strength decreased - SLR (straight leg raising) [positive] [billaterally]." [R. 396]. Nurse Schnell assessed "rarely or never" restrictions against all postural activities except climbing stairs, which she indicated Plaintiff could perform occasionally and said he should avoid all exposure to hazards (machinery, heights, etc.) and even moderate exposure to extreme cold, wetness and humidity. [R. 397]. She explained that her ratings were based on "Decreased muscle strength lower

10

extremities - more prominent [left] side with decreased DTR [deep tendon reflex] on [left] - this decreases response times to environment - cold weather [and] humidity [increases] pain levels - difficulty climbing stairs presents hazards." She described her medical findings supporting those restrictions as: "Decreased ROM [range of motion] [and] pain [after] the activity - decreased muscle strength which inhibits changes in position i.e. kneel, crawling, stooping, climbing - all this also [decreases] balance." [R. 397]. She opined Plaintiff's symptoms would increase with increased functional activity and that, if engaged in no more than sedentary activity, his impairments or treatment would cause him to be absent from work more than three times a month. [R. 398]. She set out ROM measurements and stated the symptoms and limitations applied back to her first contact with Plaintiff on April 24, 2006. [R. 398].

## The ALJ's Decision

The ALJ found Plaintiff has severe impairments of: status post fusion at L5-S1; status post fusion at L3-4 and L4-5; degenerative disc disease; depression; and anxiety. [R. 10]. He concluded Plaintiff's alleged tremors are mild and would have only a minimal affect on his ability to perform substantial gainful activity. [R. 11]. Regarding Plaintiff's mental impairments, the ALJ found Plaintiff has a moderate restriction in daily living, social functioning and concentration, persistence or pace and no episodes of decompensation. [R. 11]. The ALJ determined that Plaintiff's impairments did not meet Listing 1.04, 12.04 or 12.06. [R. 11]. He assessed Plaintiff with an RFC to occasionally lift and/or carry 10 pounds; frequently lift and /or carry up to 10 pounds; stand and/or walk for at least 2 hours in an 8-hour workday; sit for at least 5 hours in an 8-hour workday; with simple repetitive tasks and incidental contact with the public. [R. 12].

11

The ALJ quoted portions of Plaintiff testimony that he has sharp throbbing pain in his back that goes into his hips and legs, that the pain goes into his ankles and hurts all the time, that he lies in bed with a heating pad for most of the day, that he has anxiety attacks every day and tremors, that he can stand about 15-20 minutes, can lift about 15 pounds, can walk about 50 yards and that his concentration is not good. [R. 13].

The ALJ noted the 2004 x-ray of Plaintiff's left ankle and a portion of Dr. Yarosh's 2005 notation that he was walking a mile a day. [R. 13]. He pointed out that Plaintiff testified he lies in bed with a heating pad for about 20 hours a day, but testified later that he has to get up and walk around and is up and down all night. *Id.* He also noted Plaintiff's testimony that he gets the mail, throws feed to the chickens and goes outside 2-3 times a day. *Id.*

Regarding Plaintiff's allegation of side effects from his medications, the ALJ observed that the record contained only two instances of such complaints and said: "It is reasonable to assume that if the claimant's medications were properly regulated by his physician, his side effects would be minimal." [R. 13].

The ALJ acknowledged Dr. Prostic's opinion that Plaintiff is totally disabled, stated that the statement was made in the context of a state workers' compensation claim and was not entitled to controlling weight but said that it was given "some weight." [R. 13].

Regarding Nurse Schnell's RFC assessment, the ALJ said nurse practitioners are listed as an "other source" (under the regulations) and that he had considered it but

that it could not be given controlling weight because it is not from an acceptable medical source. [R. 14].

The ALJ noted the FCE done in February 2006 and Dr. Karshner's restrictions against lifting over 10-15 pounds or bending with lifting and to avoid vibrating machinery. [R. 14]. He also mentioned Dr. Bieri's opinion that sedentary-light work did not necessarily preclude any work activity. *Id.*

After concluding that Plaintiff is unable to return to his past relevant work, the ALJ cited the VE's testimony regarding the availability of jobs to a person with Plaintiff's age, education, work experience and RFC and found that Plaintiff was not disabled based upon that testimony. [R. 14-15].

## **Discussion**

Plaintiff asserts two allegations of error: 1) the ALJ failed to evaluate and weigh the medical opinions in the record as required by law, selectively disregarded aspects of the medical evidence and otherwise mischaracterized aspects of the medical evidence; and 2) the hypothetical is not consistent with the RFC. [Dkt. 16, p. 5].

Plaintiff's first objection to the ALJ's treatment of the medical evidence is focused upon the ALJ's failure to weigh Nurse Schnell's RFC opinion "under the factors set forth in the regulations." [Dkt. 16, pp. 6-7]. Counsel for the Commissioner acknowledges that the ALJ considered Nurse Schnell's opinion but gave it no weight because she is not "an acceptable medical source." [Dkt. 17, p. 5].

Counsel for the Commissioner also posits that the ALJ correctly disregarded Nurse Schnell's opinion because no treating, examining or reviewing physician opined Plaintiff had the extreme limitations Nurse Schnell assessed in her RFC opinion and

13

because no such limitations or observations were suggested by Nurse Schnell in her own office notes. *Id.* Because the ALJ did not offer these two reasons in his decision as grounds for disregarding Nurse Schnell's opinion, the undersigned cannot find in the ALJ's favor on such a basis. The Court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (ALJ's decision must be evaluated based solely on the reasons stated in the decision); *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir.2004) ("That the record contains evidence that may support a specific factual finding cannot substitute for the finding itself."); *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir.2001) ("[W]e are not in a position to draw factual conclusions on behalf of the ALJ.") (internal quotation marks omitted).

The ALJ had only this to say about Nurse Schnell's opinion:

> On November 13, 2008, Karen Schnell, ARNP, completed a medical source statement indicating that the claimant could not perform even sedentary work activity. 20 CFR 404.1513(a) lists acceptable medical sources. A nurse practitioner is not acceptable medical sources. 20 CFR 1513(d)(1) states, in pertinent part, that we may also use evidence from other sources to show the severity of an impairment or how it affects an individual's ability to work. Nurse practitioners are listed as an "other source." The undersigned has considered the evidence submitted; however, as noted above, it cannot be given controlling weight because it is not from an acceptable medical source.

[R. 13-14]. The ALJ did not say how much weight he accorded Nurse Schnell's opinion in determining the severity of Plaintiff's impairments or how those impairments affect his ability to work. The undersigned agrees with counsel for the Commissioner that the

14

ALJ ultimately decided "to give no weight" to Nurse Schnell's opinion. [Dkt. 17, p. 5]. Therefore, the issue to be addressed is whether the single reason given by the ALJ for rejecting Nurse Schnell's opinion is legally sufficient and supported by the record.

The regulations identify "acceptable medical sources" as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists and qualified speech-language pathologists. 20 C.F.R. § 404.1513(a); § 416.913(a). Only "acceptable medical sources" can provide evidence to establish the existence of a medically determinable impairment, only they can provide "medical opinions" and only they can be considered "treating sources." 20 C.F.R. §§ 404.1527(a)(2); 404.1527(d); §§ 416.927(a)(2); 416.92(d). The regulations also contemplate the use of information from "other sources" both medical and non-medical. Nurse practitioners are included in the category of "other medical sources" who may provide evidence to show the severity of a claimant's impairments and how it affects the claimant's ability to work. 20 C.F.R. § 404.1513(d); 416.913(d). The regulations do not, however, address explicitly how to evaluate evidence (including opinions) from these other medical sources.

In 2006, the Social Security Administration published a ruling intended to clarify how the Commissioner considers opinions and other evidence from medical sources who are not "acceptable medical sources." *See* Social Security Ruling (SSR) 06-03p, 2006 WL 2329939 (Aug. 9, 2006). The term "medical sources" refers to both "acceptable medical sources" and other health care providers who are not acceptable medical sources" as identified in 20 C.F.R. 404.1502 and 416.902. SSR 06-03p at*1

As explained in the ruling:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources" such as nurse practitioners ... have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

SSR 06-03p at *3.

Under this ruling, the factors set out in 20 C.F.R. 404.1527(d) and 416.927(d) "can be applied to opinion evidence from 'other sources'." The factors represent basic principles that apply to the consideration of all opinions from medical sources who are not "acceptable medical sources" as well as from "other sources." *Id.*, at *4. Those factors are:

> How long the source has known and how frequently the source has seen the individual;
> How consistent the opinion is with other evidence;
> The degree to which the source presents relevant evidence to support an opinion;
> How well the source explains the opinion;
> Whether the source has a specialty or area of expertise related to the individual's impairments(s); and
> Any other factors that tend to support or refute the opinion.

SSR 06-03p at *4, 5.

Nurse Schnell examined and observed Plaintiff sixteen times over the course of two years. [R. 263-269, 311-313, 387-394]. She reviewed records from Dr. Yarosh and other neurosurgeons and evaluators and she expressed an agreement with Dr. Bieri's findings. [R. 269, 395]. She refilled medications that were commenced by Dr. Yarosh and she prescribed a medication recommended by Dr. Pro. [R. 269, 313, 324]. The

16

undersigned agrees with Plaintiff that Nurse Schnell's opinion regarding the severity of Plaintiff's impairments and their impact on his ability to perform work functions was entitled to consideration under 20 C.F.R. 1513(d) and that the ALJ erred in failing to demonstrate that he had done so. Upon remand, the ALJ should reconsider Nurse Schnell's records and statement and articulate the weight he accorded that evidence in determining Plaintiff's RFC. *See Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir.1989) (the ALJ is required to consider all relevant medical evidence of record in reaching a conclusion as to disability); 20 C.F.R. §§ 404.1527(d), 416.927(d).

Plaintiff also contends the ALJ did not adequately articulate the weight he assigned Dr. Karshner's report and that he did not address the restriction Dr. Karshner imposed against working with vibrating machinery. [Dkt. 16, p. 8]. The undersigned agrees. Upon remand, the ALJ should explain the weight he accorded this evidence and the reasons for that weight. *See Rutledge v. Apfel*, 230 F.3d 1172 (10th Cir. 2000) (citing *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir.1997) (an ALJ must discuss the evidence supporting his decision, the uncontroverted evidence he chooses not to rely upon, and any significantly probative evidence he rejects).

Regarding the need to alternate between standing and sitting while performing work activities as described in the FCE report, it is not clear why Dr. Karshner did not include such limitations in his report. In fact, none of the treating, evaluating or examining physicians delineated maximum periods of time that Plaintiff could sit while performing sedentary work although Dr. Yarosh did note Plaintiff's complaints that sitting was "worse" than walking and standing. However, Plaintiff claimed during the hearing that he could sit no longer than 15 or 20 minutes at a time. [R. 38]. The ALJ

found Plaintiff's statements regarding his ability to stand, lift and walk "not credible to the extent they are inconsistent" with his assessed [RFC] but he did not address Plaintiff's alleged sitting limitations.[8] [R. 13]. Further clouding the issue is the discrepancy between the ALJ's written RFC that described Plaintiff's ability to sit as "at least 5 hours" and the hypothetical he presented to the VE at the hearing that included "at least six hours in an eight hour workday." [R. 12, 44]. Upon remand, the ALJ should revisit his credibility determination regarding Plaintiff's claimed sitting limitations, resolve any discrepancies or ambiguities in the evidence and articulate his findings in accordance with the proper legal standards.[9] *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (holding that evidence that could be viewed as supporting the claimant's contention should be addressed during credibility determination).

The non-examining agency consultant found Plaintiff could perform light exertional work and assessed nonexertional postural limitations. [R.301-308]. The ALJ acknowledged this evidence but he did not divulge how much weight he ultimately accorded these opinions. Nor did he explain how he concluded that Plaintiff was capable of sedentary work without the nonexertional postural limitations found to exist by the agency consultant. That sedentary work does not require some of those postural

---

[8] The ALJ apparently found Plaintiff's testimony that he could walk only about 50 yards was inconsistent with Dr. Yarosh's Sept. 26, 2005 note that Plaintiff walked at least a mile a day. [R. 13, 249]. The ALJ did not mention that, at the time the notation was made, Plaintiff was wearing a brace, that he was still two months away from physical therapy after surgery, that he exhibited "significant right SI joint pain," or that his worst discomfort was with sitting. [R. 349].

[9] The undersigned notes that both RFCs describe Plaintiff's ability to stand, walk and sit using the term "at least" rather than setting forth the "maximum amount" of time Plaintiff can engage in these work-related activities. According to the regulations, the RFC should represent "the most [a claimant] can still do despite his limitations" not "the least." 20 C.F.R. § 404.1545(a).

18

activities does not serve as an explanation as to how the ALJ weighed the evidence. This error too must be corrected upon remand. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (holding that court cannot assess whether relevant evidence adequately supports the ALJ's conclusion in the absence of ALJ findings supported by specific weighing of the evidence); SSR 96-5p (adjudicators mush weigh medical source statements in accordance with 20 C.F.R. 404.1527 and 416.927).

## **Conclusion**

The undersigned finds that the ALJ failed to adequately discuss the weight he accorded the medical evidence and failed to articulate his conclusions concerning Plaintiff's RFC by affirmatively linking those conclusions to the evidence. These errors led to deficiencies in the ALJ's determination regarding Plaintiff's credibility and his findings at subsequent steps in the evaluative sequence. Therefore, the undersigned RECOMMENDS this case be reversed and remanded to the Commissioner for reconsideration.

In accordance with 28 U.S.C. §636(b) and Fed. R. Civ. P. 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma on or before February 7, 2011.

If specific written objections are timely filed, Fed.R.Civ.P. 72(b)(3) directs the district judge to:

> determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

See also 28 U.S.C. § 636(b)(1).

The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of factual and legal questions." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for de novo review by the district court or for appellate review.

Dated this 24th day of January, 2011.

_____
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE